UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TEMPAY, INC., an Ohio
company,

        Plaintiff,

vs.                                    Case No. 8:11-cv-02732-T-27AEP

BILTRES STAFFING OF TAMPA
BAY, LLC, a Florida limited liability
company, OTTO BILTRES and
CONSTANDINA I. BILTRES, individuals,

        Defendants.
_____/

## ORDER

**BEFORE THE COURT** are Defendants' and Barry A. Cohen, P.A.'s Objection to Magistrate's Order on Plaintiff's Motion for Disgorgement of Payments Made by Defendants to Cohen & Foster (Dkt. 93) and TemPay, Inc.'s Motion to Enforce Magistrate Judge's Order (Dkt. 100). Defendants and Barry A. Cohen, P.A. (the "**Law Firm**")[1] challenge the Magistrate Judge's Order directing the Law Firm to deposit $100,000 received from Defendants as a "true retainer" into the Law Firm's trust account pending resolution of this proceeding. Plaintiff seeks to compel Defendants and the Law Firm to comply with the Magistrate Judge's Order. Because the Magistrate Judge's conclusions were neither clearly erroneous nor contrary to the law, the Objection is overruled and the motion to enforce the Magistrate Judge's Order is granted.

---

[1] At the time Defendants retained the Law Firm, the name of the firm was Cohen & Foster, P.A. The name of the Law Firm was subsequently changed to Barry A. Cohen, P.A.

## The Underlying Dispute[2]

Plaintiff, a company that specializes in payroll funding and accounts receivable factoring, entered into several Master Factoring Agreements ("**Master Agreements**") with Biltres Staffing of Tampa Bay, LLC ("**Biltres Staffing**"), whereby Plaintiff agreed to purchase and Biltres Staffing agreed to sell, certain accounts receivable of Biltres Staffing. Plaintiff contends that Defendants personally guaranteed the Master Agreements, and that after the parties entered into the Master Agreements, Plaintiff purchased receivables from four of Biltres Staffing's purported customers: Aluminum Coils, Inc.; Lennar Manufacturing, Inc.; Miller Contracting, Inc.; and RBA Print Communications (collectively referred to as the "**Biltres Staffing Customers**"). Further, as explained by Plaintiff, after Plaintiff advanced eighty-five percent of the weekly invoices from the Biltres Staffing Customers to Biltres Staffing, Plaintiff typically received full payment on those invoices forty-five to sixty days later. Invoice payments were made from checks purportedly from the Biltres Staffing Customers, which Mr. Biltres forwarded to Plaintiff. However, as alleged by Plaintiff, over the course of the parties' relationship, Plaintiff became suspicious of Biltres Staffing and Mr. Biltres's business activities, based in large part upon the steady weekly increase in staffing invoices and several customer payments that were returned for insufficient funds. Plaintiff claims that it ultimately discovered upon further investigation that it was the victim of a significant financial fraud perpetrated by Defendants, resulting in a loss to Plaintiff of approximately $2.8 million dollars.

## Facts Relevant to Disgorgement Issue

On or about November 2011, Plaintiff determined, based upon findings during its own internal investigation, that Defendants' business activities may be fraudulent. As such, Plaintiff

---

[2] The case overview and relevant facts are take from the Magistrate Judge's Order.

made attempts to discuss its findings with Otto Biltres ("**Mr. Biltres**") and to determine if Mr. Biltres had an explanation for what Plaintiff believed to be fraudulent activities.

After discussing the matter with Plaintiff, Mr. Biltres sought to retain counsel to assist with the matter. On November 30, 2011, Mr. Biltres and Constandina Biltres ("**Ms. Biltres**") met with members of the Law Firm, specifically Todd Foster ("**Mr. Foster**") and Michael Gold ("**Mr. Gold**"). Following the meeting, Defendants retained the Law Firm and entered into a retainer agreement ("**Agreement**") with the Law Firm on November 30, 2011.

Pursuant to the Agreement, Defendants retained the Law Firm to represent them in connection with "possible civil and criminal claims involving the alleged diversion of funds provided by funding sources and any possible investigations relating thereto." Defendants agreed to pay the Law Firm the "Minimum Agreed Fee" of $200,000.00, with payment of $100,000.00 due immediately and the balance due in equal monthly payments until paid in full.

On November 30, 2011, Defendants transferred $601,500.00 by wire from Defendants' account at Bank of America, N.A. ("**Bank of America**") and deposited the sum into the Law Firm's trust account. For purposes of the Motion for Disgorgement, the parties stipulate that *all* of the monies comprising the $601,500.00 deposited into the Law Firm's trust account are monies that were paid by Plaintiff to Defendants.

On December 1, 2011, based upon information provided by Defendants, Mr. Foster contacted Plaintiff's counsel, Charles Harris ("**Mr. Harris**"), to discuss the matter and to explore the possibility of resolving the matter. Based upon discussions between counsel, on December 2, 2011, at the Defendants' direction the Law Firm remitted a cashier's check to Plaintiff in the amount of $490,000.00. Also on December 2, 2011, to partially satisfy the $100,000.00 retainer fee ("**true**

**retainer"**) as provided for in the Agreement, the Law Firm transferred into the Law Firm's operating account $82,500.00 of the monies originally deposited by Defendants into the Law Firm's trust account.

On December 9, 2011, Plaintiff filed the instant suit against Defendants, along with a Motion for Temporary Restraining Order ("**TRO**"). On December 13, 2011, the Court granted the TRO (Dkt. 8) and specifically enjoined Defendants and their agents from spending, moving, transferring or conveying assets resulting from monies received from Plaintiff on or after April 20, 2011, including the funds in Defendants' accounts with Bank of America.

On December 16, 2011, as another partial satisfaction of the $100,000.00 true retainer, the Law Firm transferred into the Law Firm's operating account an additional $10,000.00 of the monies originally deposited by Defendants into the Law Firm's trust account.

Based upon a Stipulation of the parties (Dkt. 18), the Court converted the TRO into a Preliminary Injunction on December 22, 2011 (Dkt. 21). That same day, to fully satisfy the $100,000.00 true retainer, the Law Firm transferred into the Law Firm's operating account an additional $10,000.00 of the monies originally deposited by Defendants into the Law Firm's trust account. This amount was subsequently adjusted to reflect a transfer in the amount of $7,500.00.

The only money remaining in dispute at this time is the Law Firm's $100,000.00 true retainer, which was satisfied by the following transfers from the Law Firm's trust account into the operating account: (1) on December 2, 2011, in the amount of $82,500.00; (2) on December 16, 2011, in the amount of $10,000.00; and (3) on December 22, 2011, in the amount of $7,500.00.

## The Motion for Disgorgement and the Magistrate Judge's Order

On April, 6, 2012, Plaintiff filed a Motion for Disgorgement of Payments Made by Defendants to Cohen & Foster (Dkt. 59) asserting that the funds utilized by Defendants to retain counsel in this matter were fraudulently obtained from Plaintiff, and as such, the funds should be disgorged based upon two arguments: (1) the imposition and enforcement of a constructive trust based upon the Law Firm's failure to adequately inquire about the source of the alleged fraudulently obtained funds and (2) an alleged violation of the orders restraining movement of the funds. In response, the Law Firm asserted that no monies should be disgorged because the $100,00.00 retainer fee was a "true retainer fee" or "classic retainer fee," which was earned when it was paid. As such, the Law Firm asserted that it was a *bona fide* purchaser for value of the true retainer fee. The motion was referred to the Magistrate Judge for disposition (Dkt. 60).

Following briefing and oral argument, the Magistrate Judge found that the Law Firm was not a *bona fide* purchaser for value as to the monies paid by Defendants, but denied the motion without prejudice "because there is no final judgment as to the validity of Plaintiff's claims regarding the funds utilized to pay the Law Firm ... ." Noting the "nature of the dispute" regarding the challenged funds, however, the Magistrate Judge determined that the funds "should be held in trust by the Law Firm until there is an appropriate judgment entered in this case so that the Court can make a determination as to Plaintiff's request to impose a constructive trust."

Defendants and the Law Firm object to the Magistrate Judge's Order on the grounds that it is an improper prejudgment remedy (*i.e.*, an asset freeze). Defendants argue that the Order effectively equates to a preliminary injunction that is both procedurally and substantively improper.

## Standard of Review

Rule 72(a), Federal Rules of Civil Procedure,[3] permits a district court to refer any non-dispositive pretrial matter to a magistrate judge for disposition.[4] A party may object to a magistrate judge's order on a non-dispositive pre-trial matter within fourteen days after service of the order.[5]

---

[3] Rule 72, Federal Rules of Civil Procedure, provides:

> When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision. *A party may serve and file objections to the order within 14 days after being served with a copy.* A party may not assign as error a defect in the order not timely objected to. The district judge in the case must consider timely objections and modify or set aside any part of the order that is *clearly erroneous or is contrary to law*.

Fed. R. Civ. P. 72(a) (emphasis added).

[4] The parties do not question that the Magistrate Judge possessed the initial authority to resolve the motion. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(a). The relevant provision of the Federal Magistrates Act, 28 U.S.C. § 636(b)(1)(A), implemented through Federal Rule of Civil Procedure 72(a), permits a district judge to assign certain "non-dispositive" pretrial matters to a magistrate judge to "hear and decide." Fed. R. Civ. P. 72(a). A district court may also assign dispositive motions to a magistrate judge, in which case the magistrate judge may submit to the district judge only a report and recommended disposition, including any proposed findings of fact. *See* 28 U.S.C. § 636(b)(1)(B); Fed.R.Civ.P. 72(b). The magistrate judge's recommendation on a dispositive matter is not a final order, and the district judge makes the ultimate decision to adopt, reject, or modify it. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b)(3). In those instances, a magistrate judge's proposed findings and recommendations are subject to a *de novo* review by the district court. *See Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1120 (3rd Cir. 1986); *Merritt v. International Brotherhood of Boilermakers*, 649 F.2d 1013, 1017 (5th Cir. 1981).

[5] The proper procedure for seeking review of a Magistrate Judge's ruling on a non-dipositive pretrial matter is unclear in the Middle District of Florida. The better approach would be for a party to file a *motion* for review of a magistrate judge's order outlining the purported errors that require reversal of a magistrate judge's ruling. *See generally U.S. ex rel. Carter v. Halliburton*, 266 F.R.D 130 (E.D. Va. 2010) (motion for reconsideration); *Florence v. Stanback*, 607 F.Supp.2d 1119 (C.D. Cal. 2009) (motion for reconsideration); *S.E.C. v. McNaul*, 277 F.R.D. 439, 440 (D. Kan. 2011) (motion for review); *International Longshore & Warehouse Union, Local 142 v. C. Brewer & Co., Ltd.*, 496 F.Supp.2d 1179 (D. Haw. 2007) (appeal). As one commentator notes:

(continued...)

Upon consideration of a timely objection,[6] a district court may modify or vacate a magistrate judge's order to the extent that the order "is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948). "An order is contrary to law 'when it fails to apply or misapplies relevant statutes, case law or rules of procedure.'" *S.E.C. v. Kramer*, 778 F.Supp.2d 1320, 1326-27 (M.D. Fla. 2011) (quoting *Tompkins v. R.J. Reynolds Tobacco Co.*, 92 F.Supp.2d 70, 74 (N.D.N.Y. 2000)).[7]

Even though a party may object to a magistrate judge's order on a non-dispositve matter, the order is nonetheless a final order absent reversal by the district court. As a result, an objection to

---

[5](...continued)
> The legislative history of Section 636(b)(1)(A) reveals that Congress contemplated that review of a magistrate's ruling by a dissatisfied party "would normally be obtained by motion duly served, noticed and filed." It chose not to codify this motion procedure, however, noting that in some districts "the local rules now in existence provide merely that the request for review be in a letter or other written form." The way in which parties may object to magistrates' rulings under Rule 72(a) therefore is governed by local rules.

12 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 3069 (2d ed. 2012). The Local Rules in the Middle District of Florida, however, do not address the procedure for challenging a Magistrate Judge's ruling on a non-dispositive matter. *Compare* Local Rule 6.02 (governing review of reports and recommendations).

[6] Failure to timely file objections or a motion seeking review may result in the waiver of the a party's right to have the district court review a final order issued by a magistrate judge. *See F.D.I.C. v. Hillcrest Associates*, 66 F.3d 566 (2d Cir. 1995) (failure to object timely to magistrate's non-dispositive report operates as waiver of any further judicial review of magistrate's decision). However, because the time period to seek review is not jurisdictional, "a party's failure to seek timely review does not strip a district court of its power to revisit the issue." *Allen v. Sybase, Inc.*, 468 F.3d 642, 658 (10th Cir. 2006).

[7] A treatise on federal practice and procedure describes altering a magistrate's non-dispositive orders as "extremely difficult to justify." 12 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 3069 (2d ed. 2012). However, the same treatise admits that "although an abuse-of-discretion attitude should apply to many discovery and related matters, it need not curtail the power of the district judge to make needed modifications in the magistrate judge's directives." *Id.*

such final order does not stay the order or relieve the party of the obligation to comply with the order. *See Esparza v. Bridgestone/Firestone, Inc.*, 200 F.R.D. 654, 655 (D. Colo. 2001); *White v. Burt Enterprises*, 200 F.R.D. 641, 642-42 (D. Colo. 2000); *Kimbrell v. ADIA, S.A.*, 834 F.Supp. 1313, 1317 (D. Kan. 1993); *see also Maness v. Meyers*, 419 U.S. 449, 458 ("all orders and judgments of court must be complied with promptly. If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but absent a stay, to comply promptly with the order pending appeal."); *Carlucci v. Piper Aircraft Corp., Inc.*, 775 F.2d 1440, 1448 (11th Cir. 1985) (failure to comply with discovery order absent a stay of that order justified substantial Rule 37 sanctions).

## Discussion

The principal argument raised by Defendants and the Law Firm is that the Magistrate's Order directing the deposit of the $100,000 retainer into the Law Firm's trust account is an improper pretrial injunction or "asset freeze" barred by Eleventh Circuit precedent, including *Rosen v. Cascade Int'l*, 21 F.3d 1520 (11th Cir. 1994), and its progeny.[8] The *Rosen* court held that a district court lacks authority to freeze assets pending trial *solely* to establish a fund to satisfy a potential judgment for money damages. *Id.* at 1531. The *Rosen* court further explained that "the general rule of equity is that a court may not reach a defendant's assets ***unrelated to the underlying litigation*** and freeze them so that they may be preserved to satisfy a potential money judgment." *Id.* at 1527 (emphasis added; citations omitted).

---

[8] Tellingly, Defendants did not object to a general asset freeze and implicitly acknowledged the propriety of an asset freeze by consenting to the entry of the Preliminary Injunction. The Law Firm, however, now takes the position that the Court lacks the authority to order an asset freeze with respect to Defendants' assets to the extent they were paid to the Law Firm.

In this case, it is undisputed that the assets involved are directly related to the underlying action because the parties concede that the funds were paid by Plaintiffs to Defendants as a result of the alleged fraudulent scheme. That is, the funds paid to the Law Firm are traceable to the alleged illegal activity of Defendants. *Compare Mitsubishi Int'l v. Cardinal Textile Sales*, 14 F.3d 1507, 1521 (11th Cir. 1995) (***unrelated*** assets cannot be frozen to satisfy ***nonequitable*** money judgment) with *Kemp v. Peterson*, 940 F.2d 110, 113–14 (4th Cir. 1991) (district court may freeze assets not specifically traced to illegal activity). Plaintiff is not seeking an asset freeze merely to preserve general assets of the Defendants in order to ensure that there will be assets sufficient to satisfy a money judgment after trial, but rather is seeking to preserve specific assets it contends remain its property because they were acquired by Defendants as a result of fraud.

Moreover, federal courts have recognized the propriety of asset freezes where, as here, a plaintiff seeks equitable relief, including the equitable remedy of rescission. *See Levis Straus & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 987 (11th Cir. 1995) ("[a] request for equitable relief invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief"); *Federal Trade Commission v. United States Oil and Gas Corp.*, 748 F.2d 1431, 1433–34 (11th Cir. 1984) (district court may exercise its full range of equitable powers, including a preliminary asset freeze, to ensure that permanent equitable relief will be possible); *see also Deckert v. Independence Shares Corp.*, 311 U.S. 282, 290 (1940) (upholding prejudgment asset freeze in case seeking equitable relief, including appointment of receiver to wind up corporation, rescission of contracts, and the return of disputed fund of money). In this case, Plaintiff seeks equitable relief in the form of the rescission of the October 10, 2011 Agreement which, by necessity, would require Defendants to repay monies received from Plaintiff

under the Agreement – monies the availability of which can be assured only by an asset freeze. *See Billian v. Mobil Corp.*, 710 So.2d 984, 990 (Fla. 4th DCA 1998) (noting that rescission is an equitable remedy where the primary obligation is to undo the original transaction and restore the former status of the parties).

Based on the foregoing, the Magistrate Judge's determination that he had the authority to direct that any funds received by Defendants from Plaintiff as a result of their alleged fraud, be held in trust pending the outcome of this proceeding was not clearly erroneous or contrary to the law.[9] While this remedy was not expressly raised by the parties prior to the hearing on the motion, Plaintiff did request that the funds be returned to Plaintiff or, in the alternative, placed back into Defendants' bank accounts which were already frozen per the terms of the Preliminary Injunction.

Given that the Magistrate Judge had the authority to order the funds be held in trust, the next question is whether the Magistrate Judge's determination that such relief was appropriate under the circumstances was clearly erroneous or contrary to the law. The Magistrate Judge relied on a constructive trust theory in reaching his decision to direct that the true retainer be held in trust pending the outcome of this proceeding. A constructive trust is an equitable remedy designed to prevent the unjust enrichment of culpable parties. *See Bender v. CenTrust Mortgage Corp.*, 51 F.3d

---

[9] This is consistent with the terms of the TRO and the Permanent Injunction (which was entered by stipulation of the parties). This conclusion is also bolstered by Plaintiff's claim under the Florida RICO (Racketeer Influenced and Corrupt Organization) Act which grants a court broad power to enter temporary restraining orders and preliminary injunctions. *See* Fla. Stat. § 895.05; *Hudson National Bank v. Shapiro*, 695 F.Supp 544 (S.D. Fla. 1988) (finding that bank was entitled to preliminary injunction freezing bank accounts used in fraudulent credit card scheme).

1027, 1029 (11th Cir. 1995).[10] Ultimately, the Magistrate Judge did not decide whether the true retainer was subject to a constructive trust, but rather concluded that the $100,000 should be held in the Law Firm's trust account so that the Court may subsequently determine whether a constructive trust is warranted after a determination of the merits of Plaintiff's claims.

The Law Firm correctly notes that funds which are subject to a constructive trust may not be recovered from third parties if the funds cannot be traced to the third party or if the third party takes for value and in good faith. *See In re Whitacre Sunbelt, Inc.*, 211 B.R. 411, 419 (Bankr. N.D. Ga. 1997). In this case, it is undisputed that the funds transferred to the Law Firm as part of the true retainer came from Defendants and that Defendants obtained those funds from Plaintiff. *See* Order (Dkt. 91), pp. 4, 18. Thus, the only remaining issue is whether the Law Firm was a *bona fide* purchaser for value with respect to the true retainer.

The Law Firm argues that the Magistrate Judge erred in concluding that the Law Firm had a duty to inquire as to the source of the funds at the time they were received and "earned" by the Law Firm. This argument ignores the fact that the Magistrate Judge determined that the Law Firm was on inquiry notice as of the date the funds were originally placed in the Law Firm's trust account (*i.e.*,

---

[10] Plaintiff has not plead a separate claim for the imposition of a constructive trust nor has it specifically requested such relief. Plaintiff did, however, plead claims for fraud and requested preliminary injunctive relief as well as disgorgement of any proceeds Defendants obtained as a result of their fraudulent activity. Moreover, case law also suggests that a constructive trust may be imposed against a nonparty, *see Federal Trade Comm'n v. Network Services Depot, Inc.*, 617 F.3d 1127, 1145 (9th Cir. 2010) (imposing constructive trust on assets held by defendants' attorney), and the Law Firm cites no case prohibiting the imposition of a constructive trust under the circumstances of this case. Instead, the Law Firm places substantial reliance on the fact that it was a *bona fide* purchaser for value – a proposition rejected by the Magistrate Judge following an evidentiary hearing.

November 30, 2011).[11] After an evidentiary hearing, the Magistrate Judge concluded that "the circumstances were such that the Law Firm should have recognized that further inquiry was necessary into the funds used to secure the true retainer" but failed to do so and, therefore, was not a *bona fide* purchaser for value. The Magistrate Judge's determination that the Law Firm was not a *bona fide* purchaser for value is supported by the record and, therefore, is not clearly erroneous or contrary to the law.[12]

Rather than direct that the Law Firm turnover the $100,000 in funds to Plaintiff, the Magistrate Judge directed that those firms be placed in the Law Firm's trust account pending the resolution of this proceeding "because there has been no final determination about the alleged fraudulent conduct surrounding the monies." Because the funds used to pay the true retainer could properly be the subject of a prejudgment asset freeze and because the Law Firm was not a *bona fide* purchaser for value, the Magistrate Judge's ultimate determination that equity requires the placement of the true retainer in the Law Firm's trust account pending resolution of this matter was neither

---

[11] The Law Firm argues that the nonrefundable or true retainer paid by Defendants was earned upon receipt and, therefore, was properly transferred from the Law Firm's trust account to the Law Firm's operating account. In this regard, the Law Firm contends that because the fee was earned at the time of the initial transfer to the Law Firm, there was no transfer of Defendants' funds (with respect to any of the $100,000.00 retainer) made after entry of the TRO and/or Preliminary Injunction or with knowledge as to the source of the funds. While the Magistrate Judge found that the retainer was a "true retainer," the Magistrate Judge noted that "the Law Firm did not cite to any authority indicating that a true retainer is earned upon transfer into a law firm's trust account." The Magistrate Judge further concluded that because the $100,000.00 was not transferred into the Law Firm's operating account until December 1, 2012, the Law Firm did not receive (or have an ownership interest in) the true retainer until that date. *See* Order (Dkt. 91), pp. 16-17 (citing Fla. Bar Rule 5-1.1(a)(1)). More importantly, the Magistrate Judge found that the Law Firm had a duty to inquire as to the source of the funds as early as November 30, 2011 (when the were transferred into the Law Firm's trust account) as well as on December 2, 2011 (when the first $82,500.00 was transferred from the Law Firm's trust account to its operating account).

[12] The fact that $17,500.00 was transferred from the Law Firm's trust account to its operating account after the entry of the TRO and Preliminary injunction provides an additional ground for requiring the Law Firm to, at a minimum, hold those funds in trust pending the outcome of this proceeding. *See Federal Trade Comm'n v. Assail, Inc.*, 410 F.3d 256, 266 (5th Cir. 2005) (affirming district court order requiring attorneys to disgorge retainers paid from assets that were the subject of freeze order).

clearly erroneous nor contrary to the law. *See Federal Trade Comm'n. v. Network Services Depot, Inc.*, 617 F.3d 1127, 1145 (9th Cir. 2010) (affirming district court's imposition of a constructive trust over funds held by attorney's as fees for services when attorney was not a *bona fide* purchaser and did not discharge his duty of inquiry); *In re Bell & Beckwith (McGraw v. Connelly)*, 838 F.2d 844, 849 (6th Cir. 1988) (reversing district court decision that declined to order law firm to return assets used to retain attorney when such assets were the subject of a constructive trust).[13]

## Conclusion

Based on a thorough review of the record, including the Magistrate Judge's Order and the Objection, it is evident that the Magistrate Judge's decision was not clearly erroneous or contrary to the law so as to warrant reconsideration. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); *see also* Fla. Bar Rule 5-1.1(f); Fla. Stat. § 895.05; *see Network Services*, 617 F.3d at 1144-45 (requiring disgorgement of fees based on constructive trust theory even when nonrefundable retainer was paid prior to entry of asset freeze); *cf. Levis Straus*, 51 F.3d at 987.

Accordingly, it is **ORDERED**:

(1) Defendants' and Barry A. Cohen, P.A.'s Objection to Magistrate's Order on Plaintiff's Motion for Disgorgement of Payments Made by Defendants to Cohen & Foster (Dkt. 93) is **OVERRULED**.

(2) TemPay, Inc.'s Motion to Enforce Magistrate Judge's Order (Dkt. 100) is **GRANTED** to the extent that Defendants and Barry A. Cohen, P.A. are directed to comply with the

---

[13] The Magistrate's Judge's decision is also consistent with the Law Firm's ethical obligations under Florida law. *See* Fla. Bar Rule 5-1.1(f).

Order (Dkt. 91) of the Magistrate Judge by depositing the $100,000.00 retainer into the Barry A. Cohen, P.A. firm trust account within **five (5) days** from the date of this Order.

(3)   TemPay, Inc.'s request for attorneys' fees and costs incurred in bringing the Motion to Enforce the Magistrate Judge's Order (Dkt. 100) is **DENIED**.

**DONE AND ORDERED** this 8th day of March, 2013.

JAMES D. WHITTEMORE
United States District Judge

Copies to:
Counsel of Record