## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**TEMPAY, INC., an Ohio company,**

                    **Plaintiff,**

**vs.**                                 **Case No. 8:11-cv-02732-T-27AEP**

**BILTRES STAFFING OF TAMPA BAY, LLC, a Florida limited liability company, OTTO BILTRES and CONSTANDINA I. BILTRES, individuals, and PFG LOANS, INC., a California corporation,**

                    **Defendants.**

_____/

## ORDER

    **BEFORE THE COURT** are Plaintiff, TemPay, Inc.'s Motion for Summary Judgment against Defendants (Dkt. 96), Constandina Biltres' Memorandum in Opposition to Plaintiff's Motion for Summary Judgment against Defendants (Dkt. 101), Otto Biltres' Memorandum in Opposition to Plaintiff's Motion for Summary Judgment against Defendants (Dkt. 102), Biltres Staffing of Tampa Bay, LLC's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment against Defendants (Dkt. 103), and TemPay, Inc.'s Reply in Support of Motion for Summary Judgment (Dkt. 111).[1]  Upon consideration, Plaintiff, TemPay, Inc.'s Motion for Summary Judgment against Defendants (Dkt. 96) is **GRANTED** in part and **DENIED** in part.

---

[1] PFG Loans, Inc. did not respond to the motion for summary judgment and the time for filing a memorandum in opposition has elapsed. The motion, therefore, is deemed unopposed by PFG Loans, Inc.  *See* Local Rule 3.01(b).

**Introduction**

TemPay, Inc. ("**TemPay**") asserts claims against Biltres Staffing of Tampa Bay, LLC ("**Biltres Staffing**"), Otto Biltres, and Constandina Biltres (together, the "**Biltres Defendants**") for fraud, fraud in the inducement, breach of contract, violations of the Florida Deceptive and Unfair Trade Practices Act and violations of the Florida RICO Act. *See* Plaintiff's Amended Verified Complaint for Injunctive Relief and Damages (Dkt. 32) (the "**Amended Complaint**"). In addition, TemPay asserts a fraudulent transfer claim against the Biltres Defendants and PFG Loans, Inc. ("**PFG Loans**").

TemPay contends that Biltres Staffing and the Biltres Defendants were engaged in a classic "ponzi-type" scheme whereby they used TemPay money from new factored invoices to pay older invoices as they became due. TemPay also contends the Biltres Defendants wrongfully converted to their own use payments that TemPay deposited into Constandina Biltres' personal bank account.

Biltres Staffing, Otto Biltres (with the exception of the fraudulent transfer claim), and PFG Loans apparently concede liability (or at least concede that TemPay is entitled to summary judgment on the issue of liability), but dispute the amount of damages that TemPay is entitled to recover. Constandina Biltres denies liability as to all claims asserted by TemPay based on her purported lack of involvement in the alleged fraudulent and deceptive activity that is the subject of the Amended Complaint.

**The Underlying Dispute**

TemPay, a company that specializes in payroll funding and accounts receivable factoring, entered into several Master Factoring Agreements ("**Master Agreements**") with Biltres Staffing, whereby TemPay agreed to purchase and Biltres Staffing agreed to sell, certain accounts receivable

2

of Biltres Staffing.  Biltres Staffing's obligations under the Master Agreements were guaranteed by

one or both of the Biltres Defendants.[2]

During the time frame relevant to this dispute, Otto Biltres was the "President" of Biltres

Staffing and Constandina Biltres was the sole managing member of Biltres Staffing.[3]  While Otto

Biltres was responsible for the day-to-day management of Biltres Staffing,[4] Constandina Biltres

visited the Biltres Staffing office, had a business card indicating that she was "chairman or president"

of Biltres Staffing, was identified as a part owner of Biltres Staffing to at least one Biltres Staffing

employee, and may have attended client meetings on behalf of Biltres Staffing.  *See*, *e.g.,* Jessica

Roser Depo. (Dkt. 97), pp. 43-50.  In addition, Constandina Biltres exchanged emails with Biltres

Staffing employees regarding the status of various business matters and was involved in discussions

---

[2] The April 20, 2011 Master Agreement was guaranteed by both Biltres Defendants.  In contrast, only Otto Biltres executed a Guaranty with respect to the October 10, 2011 Master Agreement

[3] Otto Biltres testified at his deposition that Constandina Biltres was the sole owner and managing member of Biltres Staffing.  *See* Otto Biltres Dep. (Dkt. 83-1), p. 14.  At various times, however, both Constandina Biltres and Otto Biltres served as the registered agent and managing member of Biltres Staffing.  Constandina Biltres was first added as a managing member of Biltres Staffing in December of 2008 under her maiden name (*i.e.,* Constandina Mougros).  After marrying Otto Biltres in early 2009, Constandina Biltres became the *sole* managing member of Biltres Staffing under an amendment to the Articles of Organization filed with the Florida Department of State on or about April 24, 2009.  *See* Otto Biltres Dep. (Dkt. 83-1), pp. 14-15 (testifying that he was removed as a member and owner of Biltres Staffing due to a dispute with his ex-wife over child support obligations).  On November 29, 2012, or nearly a year after the commencement of this action, Otto Biltres replaced Constandina Biltres as the registered agent and sole managing member of Biltres Staffing.

[4] Constandina Biltres was, and continues to be, employed full time as an educator.  *See*, *e.g.,* Constandina Biltres Depo. (Dkt. 84-1), p. 4; Jessica Roser Depo. (Dkt. 97), p. 47.  The evidence of record suggests that Constandina Biltres had only limited involvement in the management of Biltres Staffing.  For example, the allegations in the Amended Complaint, the deposition testimony of TemPay's corporate representative, and the motion for summary judgment all identify Otto Biltres as the individual primarily responsible for the alleged fraudulent conduct and do not identify specific misconduct attributable to Constandina Biltres.  Similarly, Otto Biltres testified during his deposition that no other employees at Biltres Staffing were aware of the events giving rise to this litigation and that Constandina Biltres  was never an employee of Biltres Staffing.  *See* Otto Biltres Depo. (Dkt. 83-1), pp 5-6, 34.  Notwithstanding, the true extent of Constandina Biltres' involvement with Biltres Staffing is unclear because both of the individual Biltres Defendants asserted their Fifth Amendment rights during their depositions.

3

regarding the renaming of Biltres Staffing.  *See, e.g.*, Jessica Roser Depo. (Dkt. 97), pp. 47-49, 61-62.[5]

Pursuant to the April 20, 2011 Master Agreement, TemPay purchased receivables due from four of Biltres Staffing's purported customers: Aluminum Coils, Inc.; Lennar Manufacturing, Inc.; Miller Contracting, Inc.; and RBA Print Communications (collectively referred to as the "**Biltres Staffing Customers**").  TemPay advanced eighty-five percent of the customers' weekly invoices to Biltres Staffing.  TemPay typically received full payment on these invoices forty-five to sixty days later.  Purportedly, invoice payments were made by checks from the Biltres Staffing Customers, which Otto Biltres forwarded to TemPay.  After TemPay received full payment on the invoices, it deposited Biltres Staffing's "profit" payments (the "**Profit Payments**") into a bank account owned by Constandina Biltres.[6]

On October 10, 2011, TemPay and Biltres Staffing entered into a new Master Agreement that provided terms more favorable to Biltres Staffing due to "Biltres Staffing's increased invoices and alleged excellent track record as a TemPay customer to date."  Affidavit of Larry Holstein (Dkt 96-2), ¶¶ 5-6.  In addition, based on Otto Biltres' representation that Constandina Biltres no longer had any involvement with, or interest in, Biltres Staffing, Constandina Biltres was not required to execute

---

[5] Florida Department of State Records reveal that Otto Biltres and Constandina Biltres (together with other relatives) are or were officers/directors of at least two other staffing/payroll companies (*i.e.*, Preferred Staffing of America and Preferred Payroll Consultants Corporation).  Preferred Staffing of America ("**Preferred Staffing**") was incorporated on July 6, 2011, apparently to serve as the successor to Biltres Staffing.  Preferred Staffing has the same physical location, web page, and contact information as Biltres Staffing.  Although the Biltres Staffing website is no longer fully functional, individual pages from the former Biltres Staffing website are accessible and may be compared to the Preferred Staffing website. *Compare, e.g.*, http://www.preferredstaffingofamerica.com/employerservices.php (last visited May 3, 2013) with http://www.biltresstaffing.com/employerservices.php (last visited May 3, 2013).

[6] The Profit Payments were composed of the remaining 15% of an invoice amount, less TemPay's authorized fees.

a Guaranty with respect to the October 10, 2011 Master Agreement.  *Id.*  Otto Biltres signed the October 10, 2011 Master Agreement as President of Biltres Staffing and executed a Guaranty personally guaranteeing Biltres Staffing's performance under the October 10, 2011 Master Agreement.

During the course of the parties' relationship, TemPay became suspicious of Biltres Staffing and Otto Biltres's business activities, based in large part on the steady weekly increase in staffing invoices and several customer payments that were returned for insufficient funds.  In November 2011, TemPay commenced an investigation into the legitimacy of the accounts receivable purchased from Biltres Staffing.  TemPay requested that Otto Biltres provide contact information for the Biltres Staffing customers.  Otto Biltres furnished what he contended was the requested information and TemPay contacted the "customers" and "confirmed" the legitimacy of the outstanding invoices.[7]

TemPay continued its investigation even after contacting the purported Biltres Staffing Customers.  TemPay first discovered that the bank account number for Miller Contracting was identical to the account number TemPay had on file for Biltres Staffing and was the same account into which TemPay wired Biltres Staffing's weekly cash payments.  In addition, TemPay independently obtained contact information for Biltres Staffing's "customers" only to learn that none of these purported customers had ever heard of Otto Biltres, had ever worked with Biltres Staffing, and had no record of the employees Otto Biltres identified.  These facts were confirmed by depositions conducted by TemPay on February 16, 2012.[8]

---

[7] In reality, the contact information given to TemPay was fabricated by Otto Biltres and Biltres Staffing so that TemPay would reach an individual (sometimes a Biltres Staffing employee) that would falsely confirm the account information.

[8] Biltres Staffing apparently also had a number of legitimate customers, but it is unclear whether TemPay was used as a financing agent in connection with these relationships.

TemPay subsequently discovered that Otto Biltres had filed fictitious name notifications for one or more of the Biltres Staffing Customers, owned the email addresses of the purported customer contacts furnished to TemPay, and that the Bank of America accounts purportedly owned by the Biltres Staffing Customers were actually owned or controlled by Otto Biltres.

## Standard

Summary judgment is proper if, following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c). "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323-24. The evidence must be significantly probative to support the claims. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

The Court will not weigh the evidence or make findings of fact. *Anderson*, 477 U.S. at 249;

*Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003).  Rather, the Court's role is limited

to deciding whether there is sufficient evidence upon which a reasonable jury could find for the non-

moving party.  *Id.*

## Liability of Defendants

Defendants each filed separate responses to TemPay's Motion for Summary Judgment

(Dkts. 101, 102, 103).  Biltres Staffing does not dispute that it is liable to TemPay, but argues that

TemPay has failed to provide sufficient factual support to allow the Court to determine the amount

of damages it has suffered.[9]  Otto Biltres argues that he is not liable for the alleged fraudulent

transfers and that TemPay has failed to provide sufficient factual support to allow the Court to

determine the amount of damages it has suffered.  Constandina Biltres argues that genuine issues of

material fact preclude summary judgment against her and in favor of TemPay on all of its claims.

### *Invocation of the Fifth Amendment Privilege*

On December 21, 2011, TemPay took the depositions of Otto Biltres, both in his individual

capacity and as the corporate representative of Biltres Staffing, and of Constandina Biltres.  Otto

Biltres asserted his Fifth Amendment right against self incrimination in response to virtually every

question regarding this dispute.  Constandina Biltres likewise refused to answer the majority of

questions concerning her involvement with Biltres Staffing and various financial matters, including

questions about the receipt, transfer, and disposition of moneys from TemPay.

---

[9] As discussed below, disputed issues of material fact preclude summary judgment as to the amount of damages due TemPay.

The general rule is that an adverse inference may be drawn against a party in a civil action when he refuses to testify in response to probative evidence against him. *Baxter v. Palmigiano*, 425 U.S. 308, 317–18 (1976); *United States v. A Single Family Residence and Real Property*, 803 F.2d 625, 629 n. 4 (11th Cir. 1986). Defendants correctly note, however, that "[t]he negative inference, if any, to be drawn from the assertion of the Fifth Amendment does not substitute for evidence needed to meet the burden of production" required to obtain summary judgment. *Avirgan v. Hull*, 932 F.2d 1572, 1580 (11th Cir. 1991). "Rather, a party seeking summary judgment must establish independently the elements of [each] claim within the confines of [Rule 56, Federal Rules of Civil Procedure]." *SEC v. Scherm*, 854 F.Supp. 900, 905 (N.D. Ga. 1993) (citing *Avirgan*, 932 F.2d at 1580).

TemPay does not rely solely on the negative inference to be drawn from the Defendants' invocation of their Fifth Amendment rights. Rather, it offers substantial independent evidence in support of its motion for summary judgment. When, as here, a party seeking summary judgment produces additional direct evidence above and beyond any negative inference to be drawn by the invocation of the Fifth Amendment, entry of summary judgment is appropriate. *See Hoover v. Knight*, 678 F.2d 578, 582 (5th Cir. 1982) (direct evidence in addition to negative inference confirmed appellee's involvement).

### *Count I:       Fraud against Biltres Staffing and the Biltres Defendants*

To prevail on its fraud claim, TemPay must prove that Biltres Staffing and the Biltres Defendants (1) made a false statement regarding a material fact, (2) knew or should have known the statement was false at the time it was made, (3) intended that TemPay would rely on the false statement, and (4) TemPay justifiably relied on the false statement and was injured as a result. *See,*

*e.g.*, *Collins v. Countrywide Home Loans, Inc.*, 680 F.Supp.2d 1287, 1292-1293 (M.D. Fla. 2010) (quoting *Simon v. Celebration Co.*, 883 So. 2d 826, 832 (Fla. 5th DCA 2004)).

Biltres Staffing and Otto Biltres do not challenge TemPay's contention that it is entitled to summary judgment against them on its claim for fraud in Count I of the Amended Complaint. Moreover, the undisputed evidence of record demonstrates that Biltres Staffing and Otto Biltres knowingly made false statements regarding material facts intending that TemPay would rely on the false statements, TemPay justifiably relied on the false statements, and TemPay was injured as a result. Thus, the only issues remaining as to Count I are (1) whether Constandina Biltres is liable for fraud and (2) the amount of damages that TemPay is entitled to recover. As discussed below, disputed issues of material fact preclude summary judgment on these issues.

Constandina Biltres argues that TemPay has offered no evidence establishing that she made any false statements or misrepresentations to TemPay or its agents. The Court agrees that the evidence of record is insufficient to support summary judgment in favor of TemPay and against Constandina Biltres based on her personal involvement in the fraudulent scheme.

TemPay also argues that Constandina Biltres may be held liable for the fraudulent conduct of Otto Biltres and Biltres Staffing based on her role as the managing member of Biltres Staffing. TemPay correctly notes that as the managing and sole member of Biltres Staffing, Constandina Biltres was the only individual entitled to share in the profits and losses of the company, the only individual with the right to receive distributions of Biltres Staffing's assets, and the only individual with voting and management rights. *See, e.g.*, Fla. Stat. § 608.402; Fla. Stat. § 608.422; *see also Olmstead v. F.T.C.*, 44 So.3d 76, 79 (Fla. 2010).

In response, Constandina Biltres argues that TemPay's attempt to hold her liable for the fraud committed by Biltres Staffing and Otto Biltres based on her alleged failure to perform her duties as manager of Biltres Staffing fails for at least two reasons.  First, Constandina Biltres argues that TemPay did not assert a separate claim in the Amended Complaint purporting to hold her liable for her alleged failure to perform her duties as the managing member of Biltres Staffing.  *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314-15 (11th Cir. 2004) (noting that the federal pleading "standard ... does not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage").[10]  Second, Constandina Biltres argues that TemPay has failed to identify any act or conduct to support its claim that she failed to perform her duties as the managing member of Biltres Staffing.

In general, "the members, managers, and managing members of a limited liability company are not liable, solely by reason of being a member or serving as a manager or managing member, under a judgment, decree, or order of a court, or in any other manner, for a debt, obligation, or liability of the limited liability company ... ."  Fla. Stat. § 608.4227.  An exception to this general rule is created by Section 608.4228, Florida Statutes, which provides in pertinent part:

> (1)  A manager or a managing member shall not be personally liable for monetary damages to the limited liability company, its members, or any other person for any statement, vote, decision, or failure to act regarding management or policy decisions by a manager or a managing member, unless:
>
> > (a)  The manager or managing member breached or failed to perform the duties as a manager or managing member; and

---

[10] Constandina Biltres cites no other authority to support her contention that TemPay was required to expressly plead a separate claim under Section 608.4228 in order to hold her liable for damages stemming from her role as the sole managing member of Biltres Staffing.

(b)    The manager's or managing member's breach of, or failure to perform, those duties constitutes any of the following:

    1.    A violation of the criminal law, unless the manager or managing member had a reasonable cause to believe his or her conduct was lawful or had no reasonable cause to believe such conduct was unlawful. ...

    2.    A transaction from which the manager or managing member derived an improper personal benefit, either directly or indirectly.

*****

    5.    In a proceeding by or in the right of someone other than the limited liability company or a member, recklessness[11] or an act or omission which was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Fla. Stat. § 608.4228.[12]  In order to hold Constandina Biltres liable under Section 608.4228, TemPay must prove that she breached or failed to perform a duty as a managing member and that such breach or failure resulted in a violation of the criminal law, an improper personal benefit to Constandina Biltres, or constituted recklessness or an act of bad faith.

---

[11] "For the purposes of this section, the term 'recklessness' means acting, or failing to act, in conscious disregard of a risk known, or so obvious that it should have been known, to the manager or managing member, and known to the manager or managing member, or so obvious that it should have been known, to be so great as to make it highly probable that harm would follow from such action or failure to act." Fla. Stat. § 608.4228(2).

[12] In addition, a managing member owes a duty of loyalty and a duty of care to the limited liability company and all of the members of the limited liability company. Fla. Stat. § 608.4225(1).  These duties, however, are owed only to the limited liability company and its members and do not create rights in nonmembers. *See United Recovery, LLC v. Bexten*, No. 6:11–cv–1714–Orl–31KRS, 2012 WL 3854536, at *4 (M.D. Fla. Sept. 5, 2012) (dismissing claims brought by nonmember against limited liability company under Section 608.4225(1)(b)).

The undisputed evidence is insufficient to establish that Constandina Biltres personally engaged in fraud or that she is liable to TemPay based on a breach of her duty as a managing member of Biltres Staffing under Section 608.4228(b), Florida Statutes.  At best, a review of the record reveals evidence sufficient to create an *inference* that Constandina Biltres breached one or more duties as the managing member of Biltres Staffing and that she knew or should have known that Biltres Staffing was engaged in criminal activity or that she acted with reckless indifference to the fraudulent scheme.  *See* Fla. Stat. § 608.4228(b).  Similarly, the evidence of record, at best, creates an *inference* that Constandina Biltres derived a personal benefit from the fraud because, *inter alia*, the Profit Payments were deposited directly into her personal account.  *See* Fla. Stat. § 608.4228(1)(b).  When viewed in the light most favorable to Constandina Biltres, however, the evidence and inferences are insufficient to establish TemPay's entitlement to summary judgment as a matter of law.

Based on the foregoing, TemPay is entitled to summary judgment against Biltres Staffing and Otto Biltres on Count I of the Amended Complaint solely as to the issue of liability.  TemPay is not entitled to summary judgment against Constandina Biltres on Count I.

### Count II:        Fraud in the Inducement against the Biltres Defendants

To prevail on its claim for fraud in the inducement, TemPay must prove that the Biltres Defendants (1) misrepresented a material fact, (2) knew or should have known that the statement was false, (3) intended that the false statement would induce TemPay to enter into a contract or a business relationship, and (4) Tempay was injured by acting in justifiable reliance on the misrepresentation. *See, e.g.*, *Eclipse Medical, Inc. v. American Hydro–Surgical Instruments, Inc.*, 262 F.Supp.2d 1334, 1342 n. 1 (S.D. Fla. 1999); *Output, Inc. v. Danka Business Systems, Inc.*, 991 So.2d 941, 944-945

(Fla. 4th DCA 2008) (quoting *D & M Jupiter, Inc. v. Friedopfer*, 853 So.2d 485, 487-88 (Fla. 4th DCA 2003)).

Otto Biltres does not challenge TemPay's contention that it is entitled to summary judgment against him on its claim for fraud in the inducement in Count II of the Amended Complaint. Moreover, the undisputed evidence demonstrates that Otto Biltres knowingly made false statements to TemPay with the intention, and effect, of inducing TemPay to enter into the October 10, 2011 Master Agreement and that TemPay was injured by acting in justifiable reliance on the false statements. Thus, the only issues remaining as to Count II are (1) whether Constandina Biltres is liable for fraud in the inducement and (2) the amount of damages that TemPay is entitled to recover.[13] As discussed below, disputed issues of material fact preclude summary judgment on these issues.

Constandina Biltres argues that TemPay has offered no evidence establishing that she made any false statements or misrepresentations to TemPay or its agents. Constandina Biltres contends that there is not a single alleged misrepresentation referenced in the motion for summary judgment that is attributable to her. The Court agrees that the evidence of record is insufficient to support an award of summary judgment in favor of TemPay and against Constandina Biltres on its claim for fraud in the inducement.

The undisputed evidence is insufficient to establish that Constandina Biltres personally engaged in fraud in the inducement by making false statements to TemPay or that she is liable to TemPay based on a breach of her duty as a managing member of Biltres Staffing under Section

---

[13] An additional issue is whether rescission of the October 2011 Master Agreement is an appropriate remedy based on fraud in the inducement. This issue is not adequately briefed by the parties and, therefore, is not ripe for resolution by summary judgment.

608.4228(b), Florida Statutes.  At best, the record contains evidence sufficient to create an ***inference*** that Constandina Biltres breached one or more duties as the managing member of Biltres Staffing and that she knew or should have known that Biltres Staffing was engaged in criminal activity or that she acted with reckless indifference to the fraudulent scheme.  *See* Fla. Stat. § 608.4228(b).  Similarly, the evidence of record is, at best, sufficient to create an ***inference*** that Constandina Biltres derived a personal benefit from the fraud because, *inter alia*, the Profit Payments were deposited directly into her personal account.  *See id.*  When viewed in the light most favorable to Constandina Biltres, however, the evidence and inferences are insufficient to establish TemPay's entitlement to summary judgment as a matter of law.

Based on the foregoing, TemPay is entitled to summary judgment against Otto Biltres on Count II of the Amended Complaint solely as to the issue of liability.  TemPay is not entitled to summary judgment against Constandina Biltres on Count II.

### Count III:       *Breach of April 2011 Master Agreement against Biltres Staffing*[14]

To prevail on its breach of contract claim against Biltres Staffing, TemPay must prove (1) a valid contract, (2) Biltres Staffing breached the contract, and (3) TemPay suffered damages as a result of the breach.  *See, e.g.*, *Anthony Distributors, Inc. v. Miller Brewing Co.,* 941 F. Supp. 1567, 1574 (M.D. Fla. 1996).  TemPay must also show that it performed its obligations under the contract.  *See Rollins, Inc. v. Burland*, 951 So.2d 860, 876 (Fla. 2nd DCA 2006).

Biltres Staffing does not challenge TemPay's contention that TemPay is entitled to summary judgment against it on TemPay's breach of contract claim in Count III of the Amended Complaint.

---

[14] Because Plaintiffs seek to rescind the October 2011 Master Agreement for fraud in the inducement, the Amended Complaint only seeks to hold Biltres Staffing, Otto Biltres, and Constandina Biltres liable in connection with the April 2011 Master Agreement and Guaranty.  *See* Amended Complaint (Dkt. 32), ¶¶ 63, 67, 71.

Moreover, the undisputed evidence demonstrates that a valid contract existed (*i.e., the April 2011 Master Agreement*) and that Biltres Staffing breached the April 2011 Master Agreement by, *inter alia*, submitting fraudulent invoices containing fake customers and employees. *See, e.g.*, Master Agreement, § 4.7. Disputed issues of material fact exist, however, as to the amount of damages arising from this breach both because it is unclear if all monetary obligations under the April 2011 Agreement were satisfied[15] and whether the October 2011 Master Agreement is subject to rescission.[16]

Based on the foregoing, TemPay is entitled to summary judgment against Biltres Staffing on Count III of the Amended Complaint solely as to the issue of liability.

### Count IV:    Breach of April 2011 Guaranty against Otto Biltres

An action for breach of a guaranty arises from a debtor's default and the guarantor's subsequent failure to pay. *See Brunswick Corp. v. Creel*, 471 So.2d 617, 618 (Fla. 5th DCA 1985). To prevail on its breach of guaranty claim against Otto Biltres, TemPay must prove that all of the conditions precedent to the Otto Biltres' liability have occurred or were performed. *See Rossi v. Pecan Point, LLC*, No. 6:08-CV-750-Or-28KRS, 2009 WL 435064, at *4 (M.D. Fla. Feb. 20, 2009); *Alderman Interior Systems, Inc. v. First Natal–Heller Factors, Inc.*, 376 So.2d 22, 23 (Fla. 2d DCA 1979).

---

[15] Constandina Biltres argues that the undisputed facts demonstrate that all monetary obligations incurred by Biltres Staffing under the April 20, 2011 Master Agreement were satisfied. *See* Deposition of Marc Mellman (Dkt. 101), p. 61 (testifying that it appeared that all invoices prior to October 17, 2011, were paid by Biltres Staffing); *see also* Unpaid Invoice Report (Dkt. 101-6). In response, TemPay contends that Constandina Biltres' argument misconstrues the nature of the payment structure under the Master Agreements. TemPay also claims that the balance due to TemPay as of October 2, 2011, was $2,819,364.51. *See* Holstein Off. (Dkt. 96-2), ¶ 18

[16] Assuming TemPay is entitled to rescind the October 2011 Master Agreement, it is unclear what impact rescission of the October 2011 Agreement would have on the April 2011 Master Agreement (*e.g.*, would the April 2011 Master Agreement automatically be revived?).

15

Otto Biltres does not challenge TemPay's contention that it is entitled to summary judgment against him on its claim for breach of guaranty in Count IV of the Amended Complaint.  Moreover, the undisputed evidence demonstrates that a valid contract existed (*i.e.,* the April 2011 Guaranty) and that Otto Biltres breached the April 2011 Guaranty by, *inter alia*, failing to ensure that Biltres Staffing submitted accurate and legitimate invoices to TemPay under the April 2011 Master Agreement.  Disputed issues of material fact exist, however, as to the amount of damages arising from his breach both because it is unclear if all monetary obligations under the April 2011 Agreement were satisfied and whether the October 2011 Master Agreement is subject to rescission.

Based on the foregoing, TemPay is entitled to summary judgment against Otto Biltres on Count IV of the Amended Complaint solely as to the issue of liability.

### *Count V:        Breach of April 2011 Guaranty against Constandina Biltres*

Constandina Biltres argues that TemPay's attempt to hold her liable for breach of the April 2011 Guaranty fails because the undisputed facts demonstrate that all monetary obligations incurred by Biltres Staffing under the April 2011 Master Agreement were satisfied.  Even assuming that all *monetary* obligations were satisfied as to the April 2011 Master Agreement, Constandina Biltres is still liable under the April 2011 Guaranty because she failed to ensure that Biltres Staffing submitted accurate and legitimate invoices to TemPay in connection with the April 2011 Master Agreement.  Disputed issues of material fact exist, however, as to the amount of damages arising from this breach

both because it is unclear if all monetary obligations under the April 2011 Agreement were satisfied and whether the October 2011 Master Agreement is subject to rescission.[17]

Based on the foregoing, TemPay is entitled to summary judgment against Constandina Biltres on Count V of the Amended Complaint solely as to the issue of liability.

> **Count VI:**     ***Violation of the Florida Deceptive and Unfair Trade Practices Act against Biltres Staffing and the Biltres Defendants***

The Florida Deceptive and Unfair Trade Practices Act ("**FDUTPA**") is intended to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1); *see also Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc.*, 693 So.2d 602, 605-06 (Fla. 2d DCA 1997) (discussing the purpose of FDUTPA in light of its legislative history).[18]  To prevail on its FDUTPA claim against Biltres Staffing and the Biltres Defendants, TemPay must prove: (1) a deceptive or unfair practice; (2) causation; and (3) actual damages. *See, e.g.*, *Cohen v. Implant Innovations, Inc.*, 259 F.R.D. 617, 643 (S.D. Fla. 2008) (citing *Rollins, Inc. v. Butland*, 951 So.2d 860 (Fla. 2d DCA 2006)).

The concept of "unfair and deceptive" conduct is extremely broad.  *See, e.g., Millennium Communications & Fulfillment, Inc. v. Office of the Attorney Gen.*, 761 So.2d 1256, 1263 (Fla. 3d DCA 2000); *Urling v. Helms Exterminators, Inc.*, 468 So.2d 451, 453 (Fla. 1st DCA 1985).  A deceptive practice is one that is "likely to mislead" consumers. *Davis v. Powertel, Inc.*, 776 So.2d

---

[17] TemPay's contention that the April 2011 Guaranty obligates Constandina Biltres to guaranty all sums due to TemPay under *any* agreement is inconsistent with the express language of the Guaranty which refers to obligations under *"the foregoing"* Agreement.

[18] The remedies available under the FDUTPA "are in addition to remedies otherwise available for the same conduct under state or local law." Fla. Stat. § 501.213(1).

971, 974 (Fla. 1st DCA 2000).  An unfair practice is "one that 'offends established public policy'

and one that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to

consumers.'" *Samuels v. King Motor Co. of Fort Lauderdale*, 782 So.2d 489, 499 (Fla. 4th DCA

2001) (quoting *Spiegel, Inc. v. Fed. Trade Comm'n*, 540 F.2d 287, 293 (7th Cir. 1976)).

Biltres Staffing and Otto Biltres do not challenge TemPay's contention that it is entitled to

summary judgment against them on its claim for violations of the FDUTPA in Count VI of the

Amended Complaint.[19]  Moreover, the undisputed evidence demonstrates that Biltres Staffing and

Otto Biltres engaged in deceptive or unfair trade practices causing damages to TemPay.  *See*

*Sundance Apartments I, Inc. v. General Elec. Capital Corp.*, 581 F.Supp.2d 1215, 1220-21 (S.D. Fla.

2008) (concluding that borrower stated a claim under the FDUTPA against lender by alleging

lender's creation and presentation of deceptive "yield maintenance" provision in loan agreement);

*Post & Front Properties v Roanoke Constr. Co.*, 449 S.E.2d 765, 768 (N.C. App. Ct. 1994) (holding

that partnership's representation to contractor that partnership had $180,000 in construction loan

---

[19] Defendants raised as an "affirmative defense" that Count VI of the Amended Complaint (Defendants' Affirmative Defenses incorrectly refer to Count VII of the Amended Complaint) failed to state a claim because TemPay failed to allege that they engaged in conduct falling "within the FDUTPA's prohibition against unfair and/or deceptive acts in the conduct of any trade or business."  Defendants do not, however, raise this issue in opposition to TemPay's motion for summary judgment.  Moreover, the broad range of conduct outlawed by the FDUTPA brings the Defendants' conduct within the scope of the Act.  *See, e.g.*, *State, Office of Attorney General, Dep't of Legal Affairs v. Commerce Commercial Leasing*, LLC, 946 So.2d 1253, 1259 (Fla. 1st DCA 2007) (holding that Attorney General stated a claim against leasing companies under the FDUTPA in count of complaint alleging that various small businesses were victims of a Ponzi scheme); *Synovus Bank v. Karp*, 887 F. Supp. 2d 677 (W.D. N.C. 2012) ("proof of fraud necessarily constitutes a violation of the prohibition against unfair and deceptive acts" in the North Carolina Unfair and Deceptive Trade Practices Act) (quoting *Winston Realty Co. v. G.H.G., Inc.*, 97, 331 S.E.2d 677, 681 (N.C. 1985)); *Office of Attorney Gen., Dept. of Legal Affairs v. Wyndham Int'l, Inc.*, 869 So.2d 592, 598 (Fla. 1st DCA 2004) ("A deceptive or unfair trade practice constitutes a somewhat unique tortious act because, although it is similar to a claim of fraud, it is different in that, unlike fraud, a party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue."); *see also F.T.C. v. Algoma Lumber Co.*, 291 U.S. 67, 81 (1934) ("competition may be unfair within [the Federal Trade Commission Act] ... though practice condemned does not amount to fraud ..."); *Davis v. Powertel, Inc.*, 776 So.2d 971, 974 (Fla. 1st DCA 2000) (a "plaintiff need not prove the elements of fraud to sustain an action under [the FDUTPA]"); *Cohen v. J.P. Morgan Chase & Co.*, 608 F. Supp. 2d 330, 349 (E.D.N.Y. 2009) (an "[a]ct need not constitute common-law fraud to be actionable" under New York statute prohibiting deceptive acts or practices) (citing *Boule v. Hutton*, 328 F.3d 84, 94 (2d Cir. 2003)).

funds available was deceptive trade practice where partnership actually had only $12,000 in loan funds because "proof of fraud constitutes an unfair and deceptive act or practice").[20]  Thus, the only issues remaining  as to Count VI are (1) whether Constandina Biltres is liable for violating the FDUTPA and (2) the amount of damages that TemPay is entitled to recover.  As discussed below, disputed issues of material fact preclude summary judgment on these issues.

Constandina Biltres argues that TemPay has failed to provide evidence demonstrating what specific misrepresentations and/or deceptive practices she allegedly engaged in that would subject her to liability under the FDUTPA.  The Court agrees that the evidence of record is insufficient to support summary judgment in favor of TemPay and against Constandina Biltres under the FDUTPA.

"Piercing the corporate veil is not necessary to hold an individual officer liable under FDUTPA; however, the aggrieved party must show that the individual was a 'direct participant' in the improper dealings."  *North American Clearing, Inc. v. Brokerage Computer Systems, Inc.,* 666 F.Supp.2d 1299, 1311 (M.D. Fla. 2009) (quoting *KC Leisure, Inc. v. Haber*, 972 So.2d 1069, 1074 (Fla. 5th DCA 2008)).

> [U]nder the Federal Trade Commission Act[21] an individual may be liable for corporate practices in violation of that statute once corporate liability is established.  In order to prove individual liability

---

[20] While a mere breach of contract standing alone is insufficient to establish a violation of the FDUTPA, a breach accompanied by unfair or deceptive conduct is sufficient to violate the Act.  *See Bookworld Trade, Inc. v. Daughters of St. Paul, Inc.*, 532 F.Supp.2d 1350, 1364 (M.D. Fla. 2007) ("a FDUTPA claim may arise from a single [breach of] contract ... [if it involves] conduct that is unfair or deceptive as judged by controlling case law") (quoting *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So.2d 773, 777 n. 2 (Fla. 2003)); *see also Rebman v. Follet Higher Educ. Group, Inc.*, 575 F.Supp.2d 1272, 1279 (M.D. Fla. 2008) ("Florida law does not prohibit [a party] from pursuing a separate FDUTPA claim related to [an] alleged breach of [contract], so long as the act giving rise to the breach also constitutes an alleged unfair or deceptive trade practice.") (citing  *PNR*, 842 So.2d at 777 n. 2).

[21] Section 501.204(2), Florida Statutes, provides: "It is the intent of the Legislature that, in construing [the FDUTPA], due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to § 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1) as of July 1, 2006."

> it is necessary to show that an individual defendant actively participated in or had some measure of control over the corporation's deceptive practices. [ ] In addition, to hold a corporate officer liable for monetary restitution, a plaintiff is also required to establish that the defendant had or should have had knowledge or awareness of the misrepresentations. [ ]
>
> Similarly, it has long been the law in Florida that in order to proceed against an individual using a FDUTPA violation theory an aggrieved party must allege that the individual was a direct participant in the improper dealings.

*KC Leisure, Inc. v. Haber,* 972 So.2d 1069, 1073–74 (Fla. 5th DCA 2008) (citations omitted); s*ee*

*Nationwide Mut. Co. v. Ft. Myers Total Rehab Center, Inc.*, 657 F.Supp.2d 1279, 1288 (M.D. Fla.

2009) (noting that in order to proceed against an individual using a FDUTPA violation theory, an

aggrieved party must allege that the individual was a direct participant in the improper dealings).[22]

The undisputed evidence is insufficient to establish as a matter of law that Constandina

Biltres personally engaged in fraudulent or deceptive trade practices in violation of the FDUTPA or

that she breached her duties as the managing member of Biltres Staffing under Section 608.4228(b),

---

[22] "[T]o hold an individual personally liable for consumer redress, the FTC must show a heightened standard of awareness beyond the authority to control." *See F.T.C. v. Freecom Communications, Inc.*, 401 F.3d 1192, 1207 (10th Cir. 2005) ("[t]he FTC may fulfill its burden of showing the individual had actual knowledge of material misrepresentations, reckless indifference to the truth or falsity of such representations, or an awareness of high probability of fraud along with an intentional avoidance of the truth") (internal citations and quotations omitted); *see also F.T.C. v. Amy Travel Service, Inc.*, 875 F.2d 564, 574 (7th Cir. 1989) (holding that FTC was not required to prove that principals of telemarketing firms had subjective intent to defraud consumers in order for principals to be found individually liable for violation of the Federal Trade Commission Act, but rather FTC was merely required to establish that principals had or should have had knowledge or awareness of misrepresentations made to consumers).

Florida Statutes.[23]  At best, the fact that Constandina Biltres served as the managing member of

Biltres Staffing, together with the negative inferences to be drawn from her assertion of her Fifth

Amendment privilege, create an ***inference*** that Constandina Biltres was a knowing participant in a

fraudulent and deceptive activity for purposes of the FDUTPA. When viewed in the light most

favorable to Constandina Biltres, however, the evidence and inferences are insufficient to establish

TemPay's entitlement to summary judgment as a matter of law.

Based on the foregoing, TemPay is entitled to summary judgment against Biltres Staffing and

Otto Biltres on Count VI of the Amended Complaint solely as to the issue of liability.  TemPay is

not entitled to summary judgment against Constandina Biltres on Count VI.

### Count VII:     Fraudulent Transfer against the Biltres Defendants and PFG Loans

TemPay seeks to avoid under the Florida Uniform Fraudulent Transfer Act ("**FUFTA**")

transfers from the Biltres Defendants to PFG Loans made between September 6, 2011, and

December 13, 2011.  TemPay alleges that these transfers were fraudulently used by the Biltres

---

[23] *Compare F.T.C. v. Washington Data Resources*, 856 F.Supp.2d 1276-77 (M.D. Fla. 2012) (concluding that evidence was sufficient to establish that two individual defendants either participated directly in, or had authority to control, the deceptive sales practices of company, and that a third individual had authority to control company when she ascended to fill the void as *de facto* leader after the two individuals left, was sufficient to subject individuals to liability for company's violations of Federal Trade Commission Act that were committed during their management of sales division), *F.T.C. v. National Urological Group, Inc.*, 645 F.Supp.2d 1167, 1207-08 (N.D. Ga. 2008) (concluding that corporate officers of dietary supplement companies, who had ability to control companies, knew of, or at least were recklessly indifferent to, misrepresentations made in companies' advertisements, as required to hold them personally liable for deceptive representations in advertisements made by companies), *State ex rel. Fisher v. Harper*, 615 N.E.2d 733, 734 (Ohio App. Ct. 1993) (holding that an officer, cofounder, and one-quarter owner of a business engaged in an illegal pyramid sales program was personally liable under the Ohio Consumer Sales Practices Act and the Ohio Anti-Pyramid Act for consumer restitution, civil penalties, and attorney's fees, where the officer "personally benefitted" from the pyramid sales scheme since, as one-quarter owner, he received one-quarter of all commissions earned by the business under the scheme), *and People v Bestline Products, Inc.*, 132 Cal. Rptr. 767, 792 (Cal. Ct. App. 1976) (holding that all persons who participated in a meeting to set up a pyramid scheme could be liable under California law prohibiting false or misleading statements), *with State ex rel. McLeod v. VIP Enterprises, Inc.*, 335 S.E.2d 243, 245-46 (S.C. Ct. App. 1985) (holding that agents of a corporation which used a pyramid marketing scheme in violation of the unfair trade practices statute were not subject to liability under the statute as controlling persons absent evidence that they either helped to formulate company policy regarding the marketing scheme or were involved in important corporate affairs).

Defendants to "pay down and to pre-pay their mortgage through October, 2012." *See* Affidavit of Marc Mellman (Dkt. 96-4), ¶ 7.

Under section 726.105(1)(a), Florida Statutes, a transfer by a debtor "is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made ..., if the debtor made the transfer ... with actual intent to hinder, delay, or defraud any creditor of the debtor ... ." *Morton v. Cord Realty, Inc.*, 677 So.2d 1322, 1324 (Fla. 4th DCA 1996). In order to invalidate the allegedly fraudulent transfers from the Biltres Defendants to PFG Loans, TemPay must prove: (1) it was a creditor of the Biltres Defendants; (2) the Biltres Defendants, as debtors, intended to defraud TemPay; and (3) the Biltres Defendants conveyed property to PFG Loans that could have been applied to the debt due TemPay. *See Nations Bank, NA. v. Coastal Utilities, Inc.*, 814 So. 2d 1227, 1229 (Fla. 4th DCA 2002).

PFG Loans does not challenge TemPay's contention that it is entitled to summary judgment against it on the fraudulent transfer claim.[24] Moreover, the undisputed evidence establishes that PFG Loans was the recipient of the transfers. Thus, the only issues remaining as to Count VII are (1) whether the transfers were made with the actual intent to hinder, delay, or defraud TemPay, (2) whether one or both of the Biltres Defendants are individually liable for violating the FUFTA, and (3) the amount of the fraudulent transfers.

The Supreme Court of Florida has stated that the Uniform Fraudulent Transfer Act "was not intended to serve as a vehicle by which a creditor may bring a suit against a non-transferee party ... for monetary damages arising from the non-transferee party's alleged aiding-abetting of a fraudulent

---

[24] In its Answer and Affirmative Defenses to the Amended Complaint (Dkt. 48), PFG Loans relied on its lack of knowledge in denying TemPay's allegations that a fraudulent transfer occurred. PFG Loans did not assert any affirmative defenses to the fraudulent transfer claim and failed to respond to TemPay's motion for summary judgment.

money transfer." *Freeman v. First Union Nat'l Bank*, 865 So.2d 1272, 1277 (Fla. 2004).  The individual Biltres Defendants argue that they are neither debtors nor transferees with respect to the alleged fraudulent transfers and, therefore, cannot be held liable under the FUFTA.  That is, the individual Biltres Defendants contend that, at most, they aided and abetted Biltres Staffing (*i.e.*, the debtor) in transferring the disputed funds to a third party (*i.e.*, PFG Loans).

The Biltres Defendants' argument ignores the fact that they were guarantors on one or both of the factoring agreements at issue.  That is, Otto Biltres was, and Constandina Biltres might have been, a debtor of TemPay based on the guarantees and the past fraud committed with respect to TemPay.  *See Friedman v. Heart Institute of Port St. Lucie, Inc.*, 863 So.2d 189, 192 (2003) ("A 'claim' under the FUFTA may be maintained even though contingent and not yet reduced to judgment.") (quoting *Cook v. Pompano Shopper, Inc.*, 582 So.2d 37, 40 (Fla. 4th DCA 1991)); *see also Fleming v. Otis Elevator Co.*, 145 So. 201, 203 (Fla. 1933) (noting that in a suit to vacate debtor's fraudulent conveyance, debtor's wife joining in conveyance is proper but not indispensable party).  In short, this is not a situation where the Biltres Defendants merely aided and abetted a fraudulent money transfer.  Instead, liability for the fraudulent transfers is premised on the fact that the individual defendants themselves were debtors who owed money to TemPay.

The undisputed facts demonstrate that Otto Biltres made the transfers as a debtor of TemPay and with the actual intent to hinder, delay, or defraud TemPay.  In contrast, disputed issues of material fact exists as to whether Constandina Biltres was a debtor at the time of the purportedly fraudulent transfers (*i.e.,* whether the obligations relating to the Guaranty executed in connection with the April 10, 2011 Agreement had been satisfied) and whether she intended to defraud TemPay.

23

Based on the foregoing, TemPay is entitled to summary judgment against Otto Biltres and PFG Loans on Count VII of the Amended Complaint solely as to the issue of liability. TemPay is not entitled to summary judgment against Constandina Biltres.

### Count VIII:    *Violation of the Florida Rico Act against Biltres Staffing and the Biltres Defendants*

To prevail on its Florida RICO Act claims against Biltres Staffing and the Biltres Defendants, TemPay must prove (1) the Defendants intentionally participated, (2) in a scheme to defraud, (3) TemPay of money or property, (4) by means of material misrepresentations, (5) using the mails or wires, (6) that such misrepresentations would have been relied upon by a reasonable person, and (7) that TemPay incurred a specifiable amount of damages. *See, e.g.*, *Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1360-61 (11th Cir. 2002); *Green Leaf Nursery v. E.I. DuPont De Nemours and Co.*, 341 F.3d 1292, 1306 (11th Cir. 2003); *Palmas Y Bambu, S.A. v. E.I. Dupont De Nemours & Co., Inc.*, 881 So.2d 565, 571 (Fla. 3d DCA 2004); *see also Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 648-49 (2008).[25]

Biltres Staffing and Otto Biltres do not challenge TemPay's contention that it is entitled to summary judgment against them on its claims for violations of the Florida RICO Act. Moreover, the undisputed evidence reveals that Biltres Staffing and Otto Biltres participated in a scheme to defraud TemPay of money by means of material misrepresentations using the mails or wires (*e.g.*, Biltres Staffing sent fraudulent invoices and payments via Federal Express to TemPay and the defendants used wire transfers to conceal their scheme to defraud and to transfer for their personal

---

[25] Section 895.03(3), Florida Statutes, provides that "[i]t is unlawful for any person employed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of racketeering activity or the collection of an unlawful debt."

use money fraudulently obtained from TemPay) and that TemPay reasonably relied on those misrepresentations resulting in damages.  Thus, the only issues remaining as to Count VIII are (1) whether Constandina Biltres is liable for violating the Florida RICO Act and (2) the amount of damages that TemPay is entitled to recover.  As discussed below, disputed issues of material fact preclude summary judgment on these issues.

Constandina Biltres argues that TemPay has failed to present sufficient undisputed facts to establish what statements she made or conduct she engaged in constituted participation in the alleged criminal enterprise.  As discussed above in connection with TemPay's other claims against Constandina Biltres, there are disputed issues of material fact as to the role, if any, Constandina Biltres played in the fraudulent scheme or enterprise orchestrated by Otto Biltres.

Based on the foregoing, TemPay is entitled to summary judgment against Biltres Staffing and Otto Biltres on Count VIII of the Amended Complaint solely as to the issue of liability.  TemPay is not entitled to summary judgment against Constandina Biltres on Count VIII.

## Damages

Irrespective of whether TemPay is entitled to summary judgment as to liability, all Defendants argue that summary judgment is inappropriate because TemPay has failed to provide sufficient factual support to allow a determination of the amount of damages it has suffered.  Specifically, Defendants argue that TemPay's calculation of damages is overstated and inaccurate.

TemPay contends that as of February 4, 2013, Defendants owed TemPay $3,275.857.70.[26]  With the exception of the fraudulent transfer claim, TemPay seeks the same damages (*i.e.*,

---

[26] Defendants note that TemPay seeks damages in an amount inconsistent with the allegations in the Amended Complaint which alleges that Defendants owed TemPay $2,706,455.69 as of March 5, 2012.  *See* Amended Complaint (Dkt. 32), ¶ 32.

$3,275.857.70) in connection with each of its substantive claims against Biltres Staffing and the Biltres Defendants.  In response to TemPay's damage calculation, Defendants have submitted evidence which they contend establishes that the out-of-pocket loss sustained by TemPay is $1,651,936.00.  *See* Factoring Ledger (Dkt. 101-7); Payments for Profit Checks Ledger (Dkt. 101-8); Sales Journal Reports (Dkts. 101-9, 101-10, & 101-11).[27]

Defendants argue that TemPay has failed to identify those portions of affidavits, depositions, answers to interrogatories, or admissions on file that establish its alleged injury.  *See Anthony Distributors, Inc. v. Miller Brewing Co.*, 941 F.Supp. 1567, 1568 (M.D. Fla. 1996) (citing *Celotex*, 477 U.S. at 323).  In addition, Defendants argue that TemPay has failed to provide a reasonable calculation for its damages, including damages tailored to the specific claims asserted against one or more of the Defendants.  For example, Defendants argue that the damages recoverable by TemPay differ between its tort,[28] breach of contract,[29] FDUTPA,[30] and Florida RICO Act[31] claims.

---

[27] Defendants calculate out-of-pocket loss based on the amount of money paid to Biltres Staffing by TemPay ($35,385,567.01) less all payments made by Biltres Staffing to TemPay ($33,733,682.18).

[28] "Damages in tort cases are compensatory – the goal is 'to restore the injured party to the position it would have been in had the wrong not been committed.'" *In re Biddiscombe Int'l, L.L.C.*, 392 B.R. 909, 918 (Bankr. M.D. Fla. 2008) (quoting *Nordyne, Inc. v. Fla. Mobile Home Supply, Inc.*, 625 So.2d 1283, 1286 (Fla. 1st DCA 1993)). Defendants contend that this measure of damages would be equal to TemPay's out-of-pocket loss.  *But see In re Biddiscombe Int'l, LLC*, 392 B.R. at 918 ("Florida courts apply a two-pronged flexibility theory to damages in fraud which allows courts to use either the out-of-pocket or the benefit-of-the bargain rule, 'depending upon which is more likely to fully compensate the injured party.'") (quoting *Nordyne, Inc.*, 625 So.2d at 1286).

[29] "Generally, the correct measure of damages in a breach of contract action, is the loss of profits which would have resulted from the performance of the contract and which may be ascertained with a reasonable degree of certainty." *Ed Skoda Ford, Inc. v. P & P Paint & Body Shop, Inc.*, 302 So.2d 461, 461-62 (Fla. 3d DCA 1974).

[30] Defendants contend that damages under the FDUTPA are limited to TemPay's "actual loss" and do not include "lost profits."  *Rollins, Inc. v. Heller*, 454 So.2d 580, 585 (Fla. 3d DCA 1984).

[31] Defendants contend that damages under Florida's RICO Act "in the context of civil theft normally correspond to the value of the property stolen by the defendant."  *Anthony Distributors, Inc. v. Miller Brewing Co.*, 941 F.Supp. 1567, 1576-77 (M.D. Fla. 1996).

On the fraudulent transfer claim, TemPay seeks to avoid transfers from the Biltres Defendants to PFG Loans made between September and December of 2011 that TemPay alleges were used by the Biltres Defendants to "pay down and to pre-pay their mortgage through October, 2012." The total amount of the alleged fraudulent transfers, however, is unclear from the record.[32]

Because TemPay bears the burden of proving the amount of damages it suffered, and disputed issues of material fact exist as to the amount of damages due TemPay, summary judgment is denied on the issue of damages.

## Conclusion

For the foregoing reasons, Plaintiff, TemPay, Inc.'s Motion for Summary Judgment against Defendants (Dkt. 96) is **GRANTED** in part and **DENIED** in part.

(1)       Summary judgment as to liability is **GRANTED** in favor of TemPay and against Otto Biltres on Counts I, II, IV, VI, VII, and VIII of the Amended Complaint.

(2)       Summary judgment as to liability is **GRANTED** in favor of TemPay and against Biltres Staffing on Counts I, III, VI, and VIII of the Amended Complaint.

(4)       Summary judgment as to liability is **GRANTED** in favor of TemPay and against Constandina Biltres on Count V of the Amended Complaint.

(4)       Summary judgment as to liability is **GRANTED** in favor of TemPay and against PFG Loans on Count VII of the Amended Complaint.

---

[32] The Amended Complaint alleges that "[o]n November 30, 2011, December 1, 2011 and again on December 8, 2011, the Biltres Defendants transferred approximately $31,565.73 to [PFG Loans] to pre-pay their mortgage through October, 2012 ... ." Amended Complaint (Dkt. 32), ¶ 84. For purposes of summary judgment, however, TemPay seeks to avoid fraudulent transfers in the total amount of $28,569.43

27

(5)      Summary judgment is **DENIED** as to TemPay's claims against Constandina Biltres in Counts I, II, VI, VII, and VIII of the Amended Complaint.

(6)      Summary judgment is **DENIED** as to the amount of damages TemPay is entitled to recover from each Defendant.

**DONE AND ORDERED** this __15th__ day of May, 2013.

JAMES D. WHITTEMORE
United States District Judge

Copies to:
Counsel of Record

28